Etta Marie **BUCHANAN**, a feme sole,
Appellant,

v.

**AMERICAN NATIONAL INSURANCE
COMPANY**, a corporation, Appellee.

No. 6043.

Court of Civil Appeals of Texas.

El Paso.

Oct. 15, 1969.

Rehearing Denied Nov. 5, 1969.

Richard Yetter and James T. Allen, El Paso, for appellant.

Scott, Hulse, Marshall & Feuille, Richard Munzinger, El Paso, for appellee.

## OPINION

WARD, Justice.

This suit was brought on a non-medical life insurance policy by Etta Marie Buchanan, wife of the insured, Jimmie T. Buchanan, and joined by Banks Funeral Home, assignee of a portion of the policy proceeds. The appellee, American National Insurance Company, by its answer and cross-action, sought rescission and cancellation based on a breach of the "good health" provision of the policy by reason of the insured's affliction with bronchial asthma, severe obesity, and diabetes mellitus.

Prior to trial, the appellee filed its admission, pursuant to Rule 266, Texas Rules of Civil Procedure, admitting appellant's right to recover except in so far as she might be defeated by breach of the "good health" provision of the policy. Under this record, only the one issue was submitted to a jury, which found that the insured was not in good health on the policy issuance date.

The trial court canceled the policy, and only Etta Marie Buchanan has appealed. We affirm the judgment of the trial court.

The deceased, Jimmie T. Buchanan, suffered from asthma since the age of twenty and in 1955 had received a medical discharge from the Army because of his asthma. His wife admitted that he had been treated at William Beaumont General Hospital for asthma in 1961, 1962, 1964 and 1965. Available hospital records for the years 1966 and 1967 established the fact that in February, 1966 he was also admitted, that he was 34 years of age, obese, and was suffering from asthma, pneumonia and obesity. He was next seen at the hospital in September and again in October, 1966, and was admitted to the hospital in November 1966 for some five days, when he was described as being five feet six inches tall and weighing 294 pounds, being grossly obese, complaining of polyurea and polydipsea (excessive urination and excessive thirst, respectively); admitting to a weight gain from 165 pounds to 298 pounds over the preceding two-year period; suffering from bronchial asthma and diabetes mellitus. The life policy in question was issued on May 17, 1967, at which time his wife admitted he was wheezing and coughing and further admitted that his weight remained the same from that time until his death. In July, 1967 he was seen at the Hospital suffering from elevated blood pressure, complaining of sharp pains in his left chest for the previous one week, and was described in the medical records as being very obese. He was next seen at the hospital on November 1, 1967 suffering from an acute asthmatic attack and was given adrenalin. His weight was recorded at 285 pounds. The next day he was admitted to the hospital suffering from asthma, diabetes mellitus and excessive obesity. Dr. Gunther, who testified at the trial, examined Mr. Buchanan at this particular time and determined that he had high blood sugar content and noted that he had suffered from pneumonia four times previously. The doctor found diffuse wheezing in the patient's lungs. He was dis-

charged on November 5th, but returned to the hospital on November 9, 1967 in a semi-comatose state and died that day at the age of 35 years. It was the opinion of the three physicians who attended him on the day of his death that he died from an asthma attack. This was reflected by the hospital records. The death certificate reflected the immediate cause of death as bronchial asthma.

■ Appellant's first point is a "no evidence" one based on the concept that the trial court was barred by rules of law or of evidence from giving weight to the only evidence offered by the appellee to prove a vital fact, to-wit, that the insured was not in good health on the date of the issuance of the policy. It is the appellant's contention that the appellee established its case by the testimony of two doctors: one being Dr. Gunther, who had seen the insured on only the one occasion and who testified from the hospital records of William Beaumont General Hospital for the years 1966 and 1967, who gave his interpretations as to the records and his opinions therefrom; the other being Dr. Nehring, who testified in the main by answers to hypothetical questions founded on the facts and opinions contained in the hospital records. If some of the statements contained in the hospital records were inadmissible, then the opinions of these doctors as to the condition of the insured on the date of the issuance of the policy would likewise be inadmissible. As to the hospital records under discussion, the parties stipulated that the provisions of Article 3737e, Vernon's Ann.Tex.St., had been met with respect thereto. We will consider as established that the appellant reserved an objection to the introduction of the records and the subsequent testimony based on the records, on the grounds of hearsay. However, by the statute itself, a valid exception to the hearsay rule has been created. Regarding the admission of medical records, the purpose of the statute is to eliminate the necessity of calling as witnesses all persons who had a part in conducting a medical analysis and making the record thereof. The admissibility of this evidence depended upon whether the statutory predicate for its introduction was established. The requirements of the statute concerning preparation of the medical records here were established by the stipulation; therefore, the hearsay objection was eliminated. We quote from Travis Life Insurance Company v. Rodriguez, Tex. Civ.App., 326 S.W.2d 256, approved by the Supreme Court in 160 Tex. 182, 328 S.W. 2d 434:

"The 'hearsay' rule has many exceptions, most of which are court made. We know of no limitation upon the Legislature preventing it from creating an exception to the hearsay rule in civil cases. We believe that this is exactly what the Legislature did when it enacted Art. 3737e. We believe it is a valid statute and one which the courts should enforce."

See St. Paul Fire & Marine Insurance Co. v. Haynie, 389 S.W.2d 488 (Tex.Civ.App., Waco 1965, n.w.h.); Missouri Pacific Railroad Company v. Watson, 346 S.W.2d 640 (Tex.Civ.App., San Antonio 1961, wr. ref., n.r.e.); and 19 Baylor Law Review 122.

■ As to the limitation imposed by our Supreme Court with respect to the admissibility of diagnoses or opinions contained in the hospital records, as set forth in Loper v. Andrews, 404 S.W.2d 300 (Tex.1966), we feel that the diagnoses of asthma, severe obesity and diabetes mellitus were clearly admissible. In the case before the court, both Mr. Buchanan's obesity and asthmatic condition fall within the first classification set forth in the Loper case. Even to a non-medical observer, a person five feet six inches tall, weighing between 285 and 295 pounds, is clearly and manifestly obese. The asthmatic condition suffered by the deceased is based upon the demonstrable medical findings of sibilant rales and the patient's own admissions, which appear throughout the medical rec-

ords in evidence. The diagnosis of diabetes mellitus, if not within the first classifications, is within the second classification as set forth in the Loper case; that is, that the facts and findings are such that an expert interpretation may be required, but the medical condition is nevertheless well recognized and reasonably certain. Here, both Doctors Gunther and Nehring, both called by the appellee, testified, without contradiction, that the diagnosis of diabetes mellitus rested in reasonable medical certainty, having as its foundation the tremendous weight gain, obesity, excessively high blood sugar content, and the repeated complaints by the deceased of polydipsia and polyurea. Both doctors further testified that reputable physicians would not even argue over such a diagnosis. Here the offering party, the appellee, adopted one suggested approach to the problem by proving that the diagnosis was non-controversial. Vol. 44 Texas Law Review, 1627.

■ Also in support of her first point, the appellant uges that the death certificate was inadmissible. Her objection was to the effect that it was hearsay and there was no opportunity to cross-examine the person who made the notation. Here, the parties stipulated that the requirements of Article 4477, Rule 54a, and Article 3731a, V.A.T.S., had been met. Further, an examination of the certificate shows that it complies with all requirements of Article 4477, Rule 54a, and, as stated in the statute, it is not only admissible in evidence but is prima facie proof of the information therein contained. Pan American Life Insurance Company v. Andrews, 161 Tex. 391, 340 S.W.2d 787, 93 A.L.R.2d 560 (1960); Reserve Life Insurance Co. v. Estate of Shacklett, 412 S.W.2d 920 (Tex. Civ.App., Tyler 1967, wr. ref., n. r. e.). Even if the limitation imposed in the Loper case should be extended to a death certificate, the objection would have been met here. Having considered the only meritorious arguments as to the first point, the same is overruled.

■ Appellant next urges an "insufficient evidence" point based on two arguments: that appellee did not "conclusively" establish that Mr. Buchanan was not in good health; and that the sole use of circumstantial evidence is not sufficient to satisfy appellee's burden. This case was submitted to the jury by an issue in almost identical language to that quoted and approved in Great American Reserve Insurance Co. v. Britton, 406 S.W.2d 901 (Tex. 1966). The appellant, for her authority, quotes from the same case Chief Justice Calvert's language regarding "conclusively" on page 904 of the opinion, where the insurer has obtained an unfavorable finding, and of the onerous burden then placed on the insurer to overcome the finding on the issue. The language is not in point in our present situation. The burden is by a preponderance of the evidence.

■■ In regard to the complaint of circumstantial evidence, there is direct evidence from the deceased's own brother-in-law, who was called by the appellee, that the deceased always suffered from asthma, was always wheezing and coughing; that he was obese; also, the admissions by the appellant herself. Regardless of that, any ultimate fact may be proved wholly by circumstantial evidence. The circumstances shown must have probative force sufficient to constitute the basis of a legal inference of the fact sought to be proved. Prudential Insurance Company of America v. Krayer, 366 S.W.2d 779 (Tex.1963). We have reviewed the record and we might add that actually the great weight and preponderance of the evidence here is in the appellee's favor. The second point is overruled.

■ The appellant's final point complains that the definition of "good health" contained in the court's charge was defective in that it failed to include the introductory statement: "Good health does not mean perfect health". The definition given by the trial court was as follows:

"In connection with this question, the Court instructs you that the term 'good

health', as used herein, means a state of health free from any disease or bodily infirmity of a substantial nature which affects the general soundness and healthfulness of the system seriously or materially increases the risk to be assumed by the insurer."

This precise definition submitted by the trial court was approved in Great American Reserve Insurance Co. v. Britton, supra, and is the same definition before us in Cox v. National Life and Accident Insurance Company, 420 S.W.2d 213 (Tex.Civ.App., El Paso 1967, wr.ref. n.r.e.). The introductory statement would have been proper but was not required. The court need not give both an affirmative and negative definition of the same term. Saint Paul Mercury Indemnity Company v. Tarver, 272 S.W.2d 795 (Tex.Civ.App., Eastland 1954, wr.ref., n.r.e.). The form submitted was within the discretion of the trial court and the test was met in that it was reasonably clear to enable the jurors to understand the word or phrase. Vol. 3, McDonald Texas Civil Practice, § 12.14. The point is overruled.

The judgment of the trial court is affirmed.