**TEXAS FARM BUREAU MUTUAL INSURANCE COMPANY, Appellant,**

v.

**W. W. BAKER et ux., Appellees.**

**No. 1286.**

Court of Civil Appeals of Texas, Tyler.

March 13, 1980.

Rehearing Denied April 3, 1980.

Richard Grainger, Grainger & Price, Tyler, for appellant.

Glenn A. Perry, Gordon R. Wellborn, Wellborn, Houston, Bailey & Perry, Henderson, for appellees.

SUMMERS, Chief Justice.

This is a suit upon a fire insurance policy. W. W. Baker and wife (insureds), as plaintiffs, brought suit against the defendant, Texas Farm Bureau Insurance Company (insurer), for the total loss of their home and contents due to fire. The insurance company defended the case on the grounds of alleged arson.

The case was tried to a jury. In response to the special issues submitted by the court, the jury found that the value of the contents lost in the fire was $16,000.00 and that W. W. Baker did not start or cause to be started the fire in question. In accordance with the jury's verdict, the trial court rendered judgment against the defendant for $56,000.00, which amount represented the value of the contents as found by the jury together with the $40,000.00 face value of the policy on the home. From this adverse judgment, defendant has perfected its appeal to this court.

We affirm.

Appellant predicates its appeal upon four points of error, complaining that the trial court erred in excluding from evidence (1) testimony concerning plaintiffs' previous fire loss; (2) testimony concerning the fact that plaintiffs had previously offered the residence for sale at a price substantially less than the amount of insurance carried on the property; (3) testimony concerning the refusal of plaintiff, W. W. Baker, to submit to a polygraph examination; and (4) Defendant's Exhibit No. 1, the official report of the State Fire Marshal's office.

The home in the instant case was purchased by plaintiffs, W. W. Baker and wife, on March 1, 1976. At the time of purchase said home was in a badly rundown condition, and plaintiffs paid only $6,000.00 for it. Between the date of purchase and March 1977 the house was extensively repaired and remodeled. The plaintiffs also refurnished the house with new furniture.

From March until May, 1977, plaintiffs offered the house for sale, but received no firm offers. Their reason for placing it on the market was that Mrs. Baker had undergone extensive surgery and was not physically able to care for such a large house. They planned to move back to Mr. Baker's old home place and build a smaller home. However, when Mr. Baker realized what a financial investment he had in the home (the subject matter of this suit), he took it off the market and made no further attempt to sell it.

In August of 1977, James Sears, an agent for defendant Texas Farm Bureau Insurance Company, contacted plaintiffs and solicited a fire insurance policy with his company on their home and contents. Mr. Sears, who was experienced in appraising and evaluating property for purposes of insurance coverage, suggested that the plaintiffs insure their home for $40,000.00 and the contents for $16,000.00. Mr. Baker purchased such coverage under a policy issued by defendant company effective August 19, 1977, through August 19, 1978.

In the early morning hours of January 18, 1978, the house and contents were completely destroyed by fire. At the time of the fire, plaintiffs were in Houston, Texas, visiting their daughter, having left their home in Mt. Enterprise on January 17, 1978, at about 9:00 a. m. and arrived in Houston at about 2:00 p. m. on the same day. These facts were supported by the testimony of their daughter, Patsy Fogelman of Houston. The plaintiffs' presence in Houston the day of the fire was also verified by Ann Doggett, a friend and neighbor of Mrs. Fogelman in Houston, who was contacted by an agent of the insurance company. Mr. Baker learned about the fire about 8:00 a. m. on January 18, 1978, while eating break-

fast at his daughter's home in Houston. In their testimony both Mr. and Mrs. Baker denied setting the fire or causing it to be set and stated that they were unaware of anyone who would want to harm them or destroy the house.

Allen Vought of Mt. Enterprise, a witness for defendant insurance company testified that he saw what he believed to be Mr. Baker's pickup in Nacogdoches, Texas, at 11:45 p. m. on January 17, 1978; however, on cross examination, Mr. Vought could not state the model of the pickup, the license number, nor did he see or identify the driver of the truck he saw. He thought the pickup he saw was Mr. Baker's because it was baby blue with white top and antenna like the one Mr. Baker drove. Nacogdoches is 23 miles from the plaintiffs' home in Mt. Enterprise.

Mr. Vought further testified that, as a volunteer fireman of the Mt. Enterprise Fire Department, he arrived at the scene and observed two separate fires which appeared to be completely unrelated. This was contrary to the testimony of Tommy Nail, also of Mt. Enterprise, who had discovered the fire and was the first one on the scene; he testified that he only saw one area of fire and no sign of two separate fires. Because of what he thought was two ignition points, it was Vought's opinion that the fire should be classified as a suspicious act.

Bob Dennis, Arson Investigator for the State Fire Marshal's Office, testified on behalf of the defendant that he investigated the fire and based on his investigation he was of the opinion that the fire was incendiary in origin and was intentionally set.

Dennis and More LaChey, a Texas Farm Bureau Adjuster, collected two samples of the debris from the fire. These samples were analyzed by John Lynch, an independent chemist employed by the defendant to test the debris taken from the Baker residence. Lynch testified that the sample from the southeast corner of the Baker residence contained hydrocarbon residues from what was originally gasoline; that there was gasoline present before and during the fire and nothing was added after the fire. Mr. Baker testified that they had a coaloil lamp but did not have any combustible liquids or gasoline stored in the house.

In its first point of error, defendant complains of the trial court's exclusion of testimony concerning a previous fire loss of plaintiffs. The record reveals that the Bakers had a home and contents completely destroyed by fire in late 1975; that the fire occurred sometime during the morning hours while the Bakers were out of town visiting a daughter in Austin; that the Bakers collected insurance from another company (Allstate) for that fire in the total amount of $47,000.00; that no claim or evidence of arson was ever made concerning said fire; that the agent of defendant insurance company who solicited the sale of the policy in question knew of the previous fire and information regarding same was included in plaintiffs' application for this policy.

The general rule in Texas is that prior acts or transactions by one of the parties with other persons are irrelevant, immaterial and highly prejudicial and in violation of the rule that res inter alios acts are incompetent evidence, particularly in a civil case. *Payne v. Hartford Fire Insurance Company*, 409 S.W.2d 591, 594 (Tex. Civ.App.–Beaumont 1966, writ ref'd n.r.e.); *Texas Osage Co-Operative Royalty Pool v. Cruze*, 191 S.W.2d 47, 51 (Tex.Civ.App.– Austin 1945, no writ); *Traders & General Ins. Co. v. Boysen*, 123 S.W.2d 1016, 1024 (Tex.Civ.App.–Beaumont 1939, dism. judm. cor.); *Corrigan v. Heard*, 225 S.W.2d 446, 449 (Tex.Civ.App.–San Antonio 1949, writ ref'd n.r.e.); *Dallas Ry. & Terminal Co. v. Farnsworth*, 148 Tex. 584, 227 S.W.2d 1017, 1020 (1950). The doctrine of "res inter alios acta" is based on the principle that each act or transaction sued on should be established by its own particular facts and circumstances. 23 Tex.Jur.2d Evidence section 187 (1961) and cases cited therein.

Defendant contends that the testimony offered concerning the previous fire was admissible as an exception to the general

rule to show intent, design and scheme, citing *Texas Osage Co-Operative Royalty Pool, Inc. v. Cruze, supra.*

■ The exception to the general rule, stated in *Texas Osage*, is that "when the intent with which an act is done is material, other similar acts of the party whose conduct is drawn in question may be shown, *provided they are so connected with the transaction under consideration in point of time that they may all be regarded as parts of a system, scheme or plan.*" (Emphasis added.)

The court in *Texas Osage* also held that in order to bring evidence offered for the purpose of establishing a prior plan, scheme, system, intent or design within the exception to the general rule set out above, "the intent of the party whose conduct is drawn in question must be material to the wrongful act or transaction charged in the suit; and the proof or evidence must establish a definite prior design or system *which included the doing of the act charged as a part of its consummation.*" (Emphasis added.) The court further stated:

> "The rule is that if design or system has any material bearing on any issue of the case, it must be of other similar acts or transactions as distinguished from occasional or a specific instance of similar character. *Quanah A. & P. R. Co. v. Bone,* Tex.Civ.App.,199 S.W. 332; 17 Tex. Jur. 384."

*Texas Osage,* supra at 52.

■ The trial court correctly excluded evidence of the prior fire in 1975. There was no evidence of wrongdoing connected with it and defendant's agent was informed of its occurrence at the time the policy in question was purchased; it was remote in time and not connected with the case at bar; and it was a single isolated event rather than the one of several in a continuing design, system or scheme. Furthermore, we consider that the prejudicial effect of such evidence outweighed any contention of its relevancy. Defendant's first point is overruled.

In its second point of error, defendant complains of the exclusion of testimony that plaintiffs had the residence for sale at a price substantially less than the amount of insurance carried on the property.

There was testimony informing the jury (without disclosing the price) that the house had been offered for sale; that the coverage on the house ($40,000.00) was the amount suggested by the defendant's agent, after a careful inspection of the home at the time the policy was purchased. On bill of exception, the defendant adduced evidence that the price previously asked by plaintiffs for sale of the house was $23,-000.00.

■ The plaintiffs' offer of sale (from March until May 1977) was made months prior to the fire on January 18, 1978, as well as the purchase of the insurance policy in August 1977. It being undisputed that the residence was a total loss, the claim on the dwelling house was in the nature of a liquidated demand for the face value of the policy and there was no issue for the jury to decide concerning the market value of the home. Tex.Ins.Code Ann. art. 6.13 (1963). We consider that the price at which the home was previously offered for sale as irrelevant and immaterial to the issues raised in the case. Defendant's second point of error is overruled.

■ In its third point of error, defendant contends that the trial court erred in excluding testimony concerning the refusal of plaintiff, W. W. Baker, to submit to a polygraph examination. We disagree.

It is well settled in Texas that the results of a polygraph examination are not admissible in civil cases. *Central Mutual Ins. Co. v. D. & B. Inc.,* 340 S.W.2d 525, 527 (Tex.Civ. App.–Waco 1960, writ ref'd n.r.e.); *Skillern & Sons, Inc. v. Stewart,* 379 S.W.2d 687, 693 (Tex.Civ.App.–Fort Worth 1964, writ ref'd n.r.e.); *Pierson v. McClanahan,* 531 S.W.2d 672, 676 (Tex.Civ.App.–Austin 1975, writ ref'd n.r.e.).

The Texas courts also hold that proof may not be made that an accused or a witness refused to take a polygraph exami-

nation. *Renesto v. State,* 452 S.W.2d 498, 500 (Tex.Cr.App.1970); *Washburn v. State,* 167 Tex.Cr.R. 125, 318 S.W.2d 627, 637 (Tex. Cr.App.1958); 1 McCormick & Ray, Texas Law of Evidence section 652.5 (2d ed. 1978); 23 Tex.Jur.2d, Evidence, section 402, p. 601. Defendant's third point of error is overruled.

As its fourth and final point, the defendant complains of the trial court's exclusion of the State Fire Marshal's Report.

A copy of said report, consisting of five pages, was first offered by defendant in its entirety and plaintiffs' objections to it were sustained. Thereafter, defendant offered the first three pages of the report on a page-by-page basis and again plaintiffs' objections were sustained.

Defendant contends that the report and the pages offered were admissible as business records under Tex.Rev.Civ.Stat.Ann. art. 3737e.

Bob Dennis, the Arson Investigator for the State Fire Marshal's Office, who made the fire marshal's report, did not arrive on the scene until six days after the fire in question, and the plaintiffs respond that his report contains prejudicial and objectional matters, summarized as follows: Page 1, references to probable cause and probable motive; Page 2, references to probable cause and matters already excluded by the trial court, namely, the previous fire loss and the refusal of the insured Mr. Baker to take a polygraph examination; Page 3, opinion of investigator as to origin of fire, reference to previous fire loss, and hearsay regarding background of Mr. Baker; Page 4, hearsay statements of Fire Chief Tim Vought and Justice of the Peace, Charles Lee; and Page 5, hearsay statements of Charles Lee, references to several matters excluded by court and other prejudicial and speculative statements of the investigator.

■ The Texas courts have held that before business records may be admitted under art. 3737e, it must be shown that the person who either made the record or transmitted the information to another to record had personal knowledge of the act, event, or condition recorded. *Skillern & Sons, Inc. v. Rosen,* 359 S.W.2d 298, 305 (Tex.1962); *Roylex, Inc. v. Avco Community Developers, Inc.,* 559 S.W.2d 833, 837 (Tex.Civ. App.–Houston [14th Dist.] 1977, no writ). Such personal knowledge is not supplied by way of hearsay statements to the author of the record. *Switzer v. Johnson,* 432 S.W.2d 164, 169–170 (Tex.Civ.App.–Houston [1st Dist.] 1968, no writ).

In *Knoff v. United States Fidelity and Guaranty Co.,* 447 S.W.2d 497, 502, 503 (Tex.Civ.App.–Houston [1st Dist.] 1969, no writ), the court held that the report of a city fire marshal, consisting largely of hearsay statements, was inadmissible under art. 3737e, because the information failed to meet the "personal knowledge" requirement of the statute. This position is also supported by *Logan v. Grady,* 482 S.W.2d 313, 316–317 (Tex.Civ.App.–Fort Worth 1972, no writ) and *Reserve Life Insurance Co. v. Shacklett's Estate,* 412 S.W.2d 920, 923–924 (Tex.Civ.App.–Tyler 1967, writ ref'd n.r.e.).

■ Even though contained in a properly authenticated record, opinions based upon "mere speculation and conjecture" should be excluded. *Coastal States Gas Producing Co. v. Locker,* 436 S.W.2d 592, 595 (Tex.Civ. App.–Houston [14th Dist.] 1968, no writ).

■ The trial court correctly excluded the State Fire Marshal's Report, and defendant's fourth point is overruled.

Having considered all of defendant's points of error and finding them to be without merit, the judgment of the trial court is affirmed.